```
IN THE UNITED STATES DISTRICT COURT
  FOR THE EASTERN DISTRICT OF VIRGINIA

            Alexandria Division
```

F I L E D
AUG 2 0 2010
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

```
FARHAN BUKHARI,               )
                              )
        Plaintiff,            )
                              )
v.                            )   Civil Action No. 01:09-cv-1270
                              )
PIEDMONT REGIONAL JAIL        )
AUTHORITY, et al.             )
                              )
        Defendant.            )
                              )
```

## MEMORANDUM OPINION

This case is before the Court on Defendant William Chow's Motion to Dismiss and Defendant Lionel Moore's Motion to Dismiss.

On November 12, 2007, Plaintiff Farhan Bukhari, a Pakistani national, arrived at Washington Dulles International Airport in Dulles, Virginia for an interview for a medical residency position at Case Western Reserve University in Cleveland, Ohio. Upon his arrival at the airport, the U.S. Customs and Border Protection ("CBP") referred him to secondary inspection, because, as a Pakistani national, he is subject to special registration requirements. During that inspection, CBP determined that the entry documentation he presented was invalid, and further found that Plaintiff was in violation of the terms of his previous visa allowing him to enter the United States. CBP therefore denied him admission into the United States, and the Government detained and initiated removal proceedings against him.

For the duration of those proceedings, Bukhari was housed at Piedmont Regional Jail ("Piedmont") in Farmville, Virginia. During his detention, Bukhari alleges that on February 5, 2008, Defendant Chow, a case manager with U.S. Immigration and Customs Enforcement ("ICE"), denied Plaintiff's request to meet in person with his expert for his immigration case. Because of Chow's actions, Plaintiff alleges, the Court postponed the immigration hearing to enable Plaintiff to meet with his expert. This in turn caused Plaintiff to be detained for an additional period of time until his hearing date on June 9, 2008.

Additionally, Plaintiff alleges that during his detention, he and other Muslim detainees were denied access to food that complied with Islamic dietary laws and were instead given nutritionally deficient meals. Plaintiff further alleges that he raised these concerns with Moore, an ICE official, in May 2008.

Plaintiff was released from ICE detention on September 2, 2008 and is now legally present in the United States. On November 12, 2009, Plaintiff filed suit in this Court against Chow and Moore, as well as Piedmont Regional Jail Authority; John Hemingway, an ICE employee; Kevin Hicks, an Administrative Sergeant at Piedmont; Unknown Agents of Piedmont Jail; and Unknown Agents of Immigration and Customs Enforcement. In his Complaint, Plaintiff alleges that Chow's denial of Plaintiff's request to meet in person with his expert and subsequent

2

prolonged detention violated the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229a(b)(4)(B), and his rights under the Fifth Amendment of United States Constitution. Plaintiff further alleges that Moore's actions (or, inactions) regarding the food at Piedmont violated the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4. Defendants Chow and Moore filed their respective Motions to Dismiss on June 22, 2010. This Court addresses each Defendant's motion in turn.

***

In his Motion to Dismiss, Chow argues, *inter alia*, that (1) pursuant to the INA, this Court lacks subject matter jurisdiction to hear Plaintiff's case against him; (2) the Complaint fails to allege a constitutional violation; and (3) if Plaintiff's rights were violated, Chow is entitled to qualified immunity.

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim may be dismissed for lack of subject matter jurisdiction. When a defendant challenges the actual existence of the Court's subject matter jurisdiction, the plaintiff bears the burden of proving that subject matter jurisdiction exists. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 179 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "If the material jurisdiction facts are not in dispute and the moving party is entitled to prevail as a matter of law," a district court should grant the Rule 12(b)(1) Motion to Dismiss. *Richmond,*

*Fredericksburg, & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

The INA states that "judicial review of law and fact, including interpretation of application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). In other words, this "unmistakable 'zipper' clause" of the INA confines judicial review of actions arising from removal proceedings to final orders of removal under Section 1252(a)(1). *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). Section 1252(a)(5) provides that "[f]or the purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include . . . review pursuant to any other provision of law (statutory or nonstatutory)."

The first issue to consider is whether Plaintiff's claim that Chow unlawfully denied Plaintiff's request to meet in person with his expert, causing his hearing to be postponed and thus his detention to be prolonged, arises from a proceeding for removal as contemplated in 8 U.S.C. § 1252(b)(9). The Fourth Circuit has not addressed this question, but few circuits have addressed similar issues. *See, e.g., Sissoko v. Rocha*, 509 F.3d 947 (9th

Cir. 2007); *Humphries v. Various Fed. USINS Employees*, 164 F.3d 936 (5th Cir. 1999).

In *Humphries*, the plaintiff claimed that INS agents conspired to exclude him from the United States in retaliation for the exercise of his First Amendment rights, particularly his vocal criticism of the government's investigation in a case in which he served as an informant. 164 F.3d at 945. Concluding that it had no jurisdiction to hear Humphries's complaint under § 1252(g) of the INA, the Fifth Circuit held:

> this claim bears more than a cursory relationship to the Attorney General's decision to exclude Humphries. Indeed, in addition to being a significant and important event in the chain of causation leading to Humphries' alleged unconstitutional exclusion, the Attorney General's decision to place Humphries in exclusion proceedings appears to provide the most direct, immediate, and recognizable cause of Humphries' injury. Pursuant to § 1252(g), we therefore have no jurisdiction . . . .

*Id.* As in *Humphries*, the course of proceedings in the Immigration Court "provide the most direct, immediate, and recognizable cause" of Plaintiff's prolonged detention. Indeed, it was the immigration judge, not Chow, that postponed the proceeding, causing Plaintiff's detention to be extended.

In a similar case, the Ninth Circuit held that a district court lacked subject matter jurisdiction pursuant to Section 1252(b)(1)(iii)(IV) of the INA in *Sissoko*. 509 F.3d at 951. There, an alien who had overstayed his visa but had applied for legalization left the United States in the spring of 1997. On his

5

return, the defendant, an immigration inspection officer, took him into custody as an "arriving alien" without proper admission documents. Sissoko spent nearly three months in detention while proceedings pended before an Immigration Judge.

Sissoko then brought a *Bivens* action claiming that the detention was in violation of the Fourth Amendment and seeking damages. *Sissoko v. Rocha*, 440 F.3d 1145, 1149 (9th Cir. 2006) (withdrawn opinion). The inspector who determined Sissoko was inadmissible filled out the top half of the Form I-860, Notice and Order of Expedited Removal, "Determination of Inadmissibility," but not the bottom half, "Order of Removal under Section 235(b)(1) of the Act." Sissoko had indicated at his August 1997 inspection that he had a fear of persecution if he returned to his country of origin; accordingly, the inspector referred him for an interview by an asylum officer. Pending completion of asylum proceedings, the mandatory detention provision contained in 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) applied. Ultimately, Sissoko never had a credible fear interview because he was issued a Notice to Appear and placed in regular removal proceedings. *Sissoko*, 509 F.3d at 949. The Ninth Circuit concluded that Sissoko's detention arose from Defendant's decision to commence expedited removal proceedings and held that 8 U.S.C. § 1252(g)'s jurisdiction-stripping language covered the Sissoko's false arrest claim.

These cases demonstrate that Plaintiff cannot evade the withdrawal of subject matter jurisdiction by looking to the injury he claims rather than the cause. Here, Plaintiff was detained pending his immigration hearing, and his claim of prolonged detention in violation of his Fifth Amendment rights arose incident to his immigration hearing. Because this Court lacks subject matter jurisdiction to hear this case, Defendant Chow's Motion to Dismiss is GRANTED.

***

In Moore's Motion To Dismiss, Moore argues, *inter alia*, that (1) RFRA does not apply to non-resident aliens; (2) RFRA does not provide for a damages remedy against a defendant sued in his individual capacity; and (3) even if RFRA does apply to non-resident aliens and to individuals in their personal capacities, Moore is entitled to qualified immunity.

To fully understand RFRA, one must examine the unique history of this statute. In 1993, Congress enacted RFRA "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1). In *Sherbert* and *Yoder*, the Supreme Court had held that a government must demonstrate a compelling interest to justify a substantial burden on the free exercise of religion

under the First Amendment. *See Sherbert*, 374 U.S. at 406-07; *Yoder*, 406 U.S. at 215. In *Employment Div., Dep't of Human Res. Of Oregon v. Smith*, 494 U.S. 972 (1990), however, the Supreme Court limited the reach of *Sherbert* and *Yoder* and held that a neutral, generally applicable law may abridge religious exercise regardless of a compelling interest. *Id.* at 884-85. In response to this ruling, Congress passed RFRA to express its disapproval of *Smith* and to restore the pre-*Smith* compelling interest test. 42 U.S.C. § 2000bb(b)(1). Accordingly, RFRA does not expand the scope of the free exercise of religion beyond that encompassed by the First Amendment prior to *Smith*. *See Rasul v. Myers*, 563 F.3d 527, 532-33 (D.C. Cir. 2009), *cert denied*, 130 S. Ct. 1013 (2009) (Mem.).

The Supreme Court, in turn, expressed its disapproval of RFRA in *City of Boerne v. Flores*, 521 U.S. 507 (1997), in which the Court held that RFRA was not a valid exercise of Congress's remedial power under Section 5 of the Fourteenth Amendment and therefore could not be applied to the states and their localities. 521 U.S. at 532-33. That ruling, however, did not affect RFRA's validity as to the federal government and the District of Columbia, which are federal entities not subject to the Fourteenth Amendment. *Madison v. Ritter*, 355 F.3d 310, 315 (4th Cir. 2003); *see, e.g., Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006)

(applying RFRA to the federal government).

In *Rasul*, the D.C. Circuit Court of Appeals held that RFRA did not apply to non-resident aliens. 563 F.3d at 533. Because RFRA's "aim was to restore . . . the free exercise right the Constitution guaranteed-in both substance and scope" that existed prior to *Smith*, the court held that "the term 'person' as used in RFRA should be read consistently with similar language in constitutional provisions, as interpreted by the Supreme Court at the time Congress enacted RFRA." *Id.* (citation omitted). When RFRA was passed, Congress legislated against a background of Supreme Court cases that held "that nonresident aliens [a]re not among the 'person[s]' protected by the Fifth Amendment, and were not among 'the people' protected by the Fourth Amendment." *Id.* (citing *Johnson v. Eisenstrager*, 339 U.S. 763, 780 (1950), and *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1989)).

This Court finds *Rasul*, the only circuit case directly on point, persuasive. Because the term 'person' as used in RFRA should be read in line with similar language in constitutional provisions, RFRA does not apply to nonresident aliens such as Bukhari.

The doctrine of the "entry fiction" further dictates this result. When, as here, a once lawfully admitted alien leaves the United States and is then denied admission upon seeking reentry, the alien is "treated, for constitutional purposes, 'as if

stopped at the border.'" *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). The alien's physical presence within the Nation's territorial borders "d[oes] not count as entry into the United States." *See id.* This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.* (citing *Kaplan v. Tod*, 267 U.S. 228, 230 (1925)). The Ninth Circuit recently explained that

> Aliens standing on the threshold of entry are not entitled to the constitutional protections provided to those within the territorial jurisdiction of the United States. For this reason, immigration laws can constitutionally treat aliens who are already on our soil (and who are therefore deportable) more favorably than aliens who are merely seeking admittance (and who are therefore excludable). The entry fiction explains the apparent paradox: the doctrine provides that although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country.

*Aguilera-Montero v. Mukasey*, 548 F.3d 1248, 1253 (9th Cir. 2008) (citations and quotations omitted). As a non-resident alien subject to the entry fiction at all times relevant to this litigation, Plaintiff is not entitled to the protections of RFRA because he does not retain First Amendment rights, and consequently, he is not a "person[]" within the meaning of RFRA, 42 U.S.C. § 2000bb-1.

Plaintiff argues that when Congress amended RFRA in 2000 and

10

eliminated the phrase "First Amendment" from the definition of "exercise of religion," see 42 U.S.C. §§ 2000bb-2(4), 2000cc-5(7)(A), Congress intended to protect those exercising their religion, not just those who have First Amendment rights. This Court disagrees. From the unique legislative history of RFRA, it is clear that Congress intended to expand the scope of religious practices protected by RFRA, not to increase the universe of those protected by the statute. See Rasul, 563 U.S. at 535 (Brown, J., concurring) (citing H.R. REP. No. 106-219, at 30; Adkins v. Kaspar, 393 F.3d 559, 567-68 & n.34 (5th Cir. 2004); Navajo Nation v. U.S. Forest Serv., 479 F.3d 1024, 1033 (9th Cir. 2007)).

Accordingly, Defendant Moore's Motion to Dismiss must be GRANTED.

Because this Court has found that it lacks subject matter jurisdiction to hear Plaintiff's claim against Defendant Chow, it need not address whether the Complaint fails to allege a constitutional violations and whether Chow is entitled to qualified immunity if Plaintiff's rights were in fact violated. Similarly, because this Court has found that RFRA does not apply to Plaintiff, this court need not address whether RFRA provides for a damages remedy against a defendant sued in his individual capacity or whether Moore is entitled to qualified immunity if RFRA did apply to this case.

An appropriate order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
August 20, 2010